|  |  |
|---|---|
| **N'SAMBA NDONDJI,**[1] | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 09-02457 (JDB)** |
| **INTERPARK INC.,** **INTERPARK HOLDINGS, INC.** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff N'samba Ndondji brings this action against his former employer, InterPark Incorporated, and its parent company, InterPark Holdings Incorporated[2] ("collectively InterPark"), asserting claims of discrimination and retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 et seq. Now before the Court is InterPark's motion to partially dismiss the amended complaint. For the reasons discussed below, the Court will grant in part and deny in part InterPark's motion.

## BACKGROUND

Ndondji, a black male from Angola, started working on July 28, 1988, as a lobby attendant for InterPark at the Willard Hotel. Am. Compl. ¶¶ 1-2. During his employment,

---

[1] Ndondji's name was originally misspelled in the complaint but was corrected in the amended complaint.

[2] InterPark argues in a footnote to its filings that InterPark Holdings Inc., the parent company of InterPark Inc., is not a proper defendant in this case because (1) the parent company did not employ Ndondji, and (2) the parent company was not properly served with a summons. InterPark Holdings Inc. should file a motion if it seeks to be dismissed on this basis.

InterPark transferred him to several different facilities to work as a parking attendant and then later as an assistant manager. Id. He completed courses for customer service and was recognized as "employee of the month" several times. Id. ¶¶ 7-8.

As a result of his work, Ndondji claims that he was transferred to assignments "where others would not go" and "where the company was most busy." Id. ¶ 9. According to Ndondji, he would improve the parking situation at each location but received "little or no [pay] increases" for his efforts. Id. Sometime in 2004, Ndondji was transferred to the 1900 19th Street N.W. location, which he alleges was one of the "busiest" locations and where some parking attendants[3] caused accidents. Id. ¶ 10. "No one else was interested in taking this location." Id. Ndondji alleges that he "immediately improved all areas of operation at this location," id. ¶ 11, and focused on improving revenue and decreasing the number of accidents, id. ¶ 12. Ndondji attempted to improve the performance of attendants by "testing" each one to determine if they could perform their jobs. Id. ¶ 14. Many employees failed his test, but management insisted that he continue working with them and "resisted" his efforts to improve the location. Id.

Although he fails to specify the timing of the alleged discrimination, Ndondji contends that management placed him in the "worst" and "most difficult locations" and continued to impose conditions that prevented him from successfully performing his job. Id. ¶¶ 33-34. He was ordered to "refrain from putting up a 'Full' sign even when there were no safe [parking] spaces available," id. ¶ 13, and was forced to "overpark" to increase revenue, even though overparking could lead to more accidents, id. ¶ 36.

_____

[3] Ndondji appears to use "attendants" and "assistants" interchangeably throughout the amended complaint. To be consistent, the Court will use "attendants."

Ndondji also claims that he received "very little support with manpower."  Id. ¶¶ 14-15, 34.  Management allegedly failed to provide him with competent attendants and send replacements when attendants failed to show up or called in sick.  Id. ¶ 15.  Unlike other workers who were "similarly situated" and "not Black or of Angolan descent," he was forced to work without a reasonable number of attendants and was not allowed to choose the attendants assigned to his area.  Id. ¶ 32a.

Sometime in the beginning of 2006, Ndondji claims that garage and area managers requested a meeting with corporate human resources department representatives from the Chicago office to complain about the "ongoing discrimination" against "individuals of African descent."  Id. ¶ 17.  During the summer of 2006, human resources representatives met with InterPark employees who complained about Melissa Silver-Ward from the human resources department and Richard Rosenberger, the District General Manager.  Id. ¶ 18.  These employees complained that foreign nationals received different treatment than non-foreign nationals and that Rosenberger had targeted "foreign nationals" for disciplinary action.  Id. ¶ 19.  Ndondji was "very vocal" at this meeting and claims that the representatives "promised to investigate and respond" to the employees' complaints but never did.  Id.  ¶ 21.

Ndondji alleges that Silver-Ward then assigned Tony Stevenson, a new manager, to "observe" and "spy" on him in retaliation for his complaints of discriminatory behavior.  Id. ¶¶ 40B, 47.  Stevenson allegedly made "false statements regarding [his] practices," id. ¶ 23, and falsely accused him of taking money and of poor performance, id. ¶¶ 40C, 48.  Ndondji claims that Stevenson's accusations were untrue and that he actually improved the conditions at the garage.  Id. ¶¶ 24, 42-44.  Shortly thereafter, Ndondji was placed on a Performance Improvement

Plan ("PIP") for "failing to reduce the accidents and improve revenue." Id. ¶ 23. Although he believed he should not have been placed on the PIP, Ndondji maintains that he tried "his hardest" to make even greater improvements and "gave up lunch and times off to drive when attendants were unavailable." Id. ¶ 25. Ndondji claims he never received periodic PIP evaluations as required and was fired at the end of the PIP and before his scheduled vacation. Id. ¶¶ 26-27, 45. On December 12, 2006, Ndondji was terminated for failing to make improvements, although he maintains that he was never offered any evidence of his poor performance. Id. ¶ 27.

Ndondji alleges that he filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on February 27, 2007 and received an EEOC right-to-sue letter that was dated September 30, 2009. Id. ¶¶ 28-29. On December 30, 2009, Ndondji filed his case in this Court. Ndondji's amended complaint is vague in its allegations and does not distinguish clearly between claims, but the Court discerns the following claims: (1) discrimination and retaliation claims under section 1981, (2) discrimination and retaliation claims under Title VII, and (3) discrimination and retaliation claims under DCHRA.

On March 1, 2010, InterPark filed a motion to partially dismiss the complaint and attached as an exhibit Ndondji's "Charge of Discrimination" ("DCOHR/EEOC charge") that he filed with the D.C. Office of Human Rights ("DCOHR") on June 4, 2007. Ndondji's DCOHR/EEOC charge was cross-filed with the EEOC. On the DCOHR/EEOC charge, Ndondji checked the box that indicated that he had been discriminated against on the account of his national origin. He alleged that (1) he had been "unjustly issued a disciplinary write-up" and (2) "unjustly discharged from employment." Ndondji filed his opposition to the motion on March

12, 2010.[4]  On March 15, 2010, Ndondji filed an amended complaint, and on March 29, 2010,

prior to any discovery, InterPark filed a second motion to partially dismiss the amended

complaint, which is now ripe.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed

factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide

the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550

U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting

Twombly, 550 U.S. at 570); accord Atherton v. District of Columbia Office of the Mayor, 567

F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[4] Ndondji attached a copy of his EEOC Intake Questionnaire, dated February 27, 2007.  Ndondji's amended complaint demonstrates that he views the submission of his EEOC Intake Questionnaire as the date when he first filed a complaint with the EEOC.  See Plaintiff's EEOC Intake Questionnaire, Pl.'s Response, Exh. 1.

The Court considers this motion under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 56.  As a result, the Court will not consider documents beyond Ndondji's formal DCOHR/EEOC charge dated June 4, 2007 and will exclude the EEOC Intake Questionnaire in evaluating InterPark's motion to dismiss.  Even if the Court were to consider the EEOC Intake Questionnaire, it only reiterates Ndondji's allegations in his DCOHR/EEOC charge and would not change the Court's analysis of this motion.

for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged"

approach" under which a court first identifies the factual allegations entitled to an assumption of

truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at

1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura

Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534

U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to

dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics &

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968

(D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The

plaintiff must be given every favorable inference that may be drawn from the allegations of fact.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if

such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns

Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion

couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further

factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also

Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008)

(explaining that the court has "never accepted legal conclusions cast in the form of factual

allegations").

## DISCUSSION

In considering a motion to dismiss, "a court is limited to considering facts alleged in the complaint, any documents attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record." Felder v. Johanns, 595 F. Supp. 2d 46, 58-59 (D.D.C. 2009) (citing EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997)).  A court may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment because such records are "public document[s] of which a court may take judicial notice." Ahuja v. Detica Inc., No. 09-2246, 2010 WL 3833956, at *4 (D.D.C. September 30, 2010) (citing Wiley v. NEBF Invs., No. 09-CV-223, 2010 WL 114953, at *1 n.1 (D.D.C. January 12, 2010)); see also Williams v. Chu, 641 F. Supp. 2d 31, 35 (D.D.C. 2009) (finding that the court could take judicial notice of EEOC decision denying plaintiff's request for reconsideration of her discrimination complaints).  The Court may therefore consider Ndondji's Charge of Discrimination that was filed with the DCOHR and cross-filed with the EEOC in evaluating this motion.

InterPark now moves to dismiss most of Ndondji's claims in his amended complaint, except his discrimination claims under Title VII and DCHRA based on his termination. InterPark argues that all of Ndondji's section 1981 claims should be dismissed because his claims are not based on racial discrimination and that his other Title VII and DCHRA discrimination and retaliation claims should be dismissed because he failed to exhaust his administrative remedies, those claims are barred by the statute of limitations, and Ndondji failed to establish a prima facie case of discrimination.  The Court will address each of these arguments in turn.

## I. Section 1981 Claims

### A. Failure to State a Claim

InterPark moves to dismiss all of Ndondji's section 1981 claims because he only alleges national origin discrimination and section 1981 provides protection against racial discrimination only. Mem. of Points and Auth. in Supp. of Def. Interpark Inc.'s Mot. to Partially Dismiss Pl.'s Am. Compl. ("Def.'s Mem.") at 5-8; Def. InterPark Inc.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Partially Dismiss Pl.'s Am. Compl. ("Def.'s Reply") at 2-4. InterPark argues that the only basis for discrimination that Ndondji identified in his DCOHR/EEOC charge and his amended complaint was national origin. Def.'s Mem. at 5; Def.'s Reply at 3, n.2. Ndondji responds that he sufficiently alleged that he was discriminated against because of his race, adding that discrimination based on ancestry and ethnic characteristics can also be the basis for a section 1981 claim. Pl.'s Response and Opp.'n to Def.'s Mot. to Partially Dismiss Am. Compl. ("Pl.'s Response") at 3-4.

The Supreme Court recognized in St. Francis College v. Al-Khazraji that section 1981 prohibits racial discrimination and protects classes of persons from "intentional discrimination solely because of [] ancestry or ethnic characteristics." 481 U.S. 604, 613 (1987). Section 1981 does not prohibit national origin discrimination per se, and a plaintiff must demonstrate that the discrimination is based on "ancestry or ethnic characteristics," not on his country of origin, in order to prevail in a section 1981 suit. See Amiri v. Hilton Washington Hotel, 360 F. Supp. 2d 38, 42-43 (D.D.C. 2003) (dismissing section 1981 claim when plaintiff did not base his complaint on racial or ethnic characteristics but rather based it solely on the fact that he was from Afghanistan); Kidane v. Northwest Airlines, Inc., 41 F. Supp. 2d 12, 12 (D.D.C. 1999)

(finding that discrimination claims based on plaintiff's national origin, Ethiopia, were not cognizable under section 1981); Wesley v. Howard Univ., 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (national origin discrimination claims can be raised under section 1981 only when based on "racial or ethnic characteristics associated with the national origin in question").

Even the most liberal reading of Ndondji's allegations, with all reasonable inferences drawn in his favor, confirms that he is alleging discrimination based on national origin, not race. Ndondji's factual allegations are devoted to discriminatory acts based on his national origin. He complains that individuals who were "not foreign nationals" did not receive the same treatment as "foreign nationals"; that complaints by "foreign nationals" were ignored by management; that InterPark supervisors made statements that "illustrated their bias against foreign nationals"; that he was terminated because of his "foreign nationality"; and that a "non-foreign national ('American')" took his position. Am. Compl. ¶¶ 17, 19, 20, 38, 59-60. Nearly all of Ndondji's claims allege that he was discriminated against based on his national origin, Angolan, and the fact that he was a "foreign national," not based on his race. See Hyman v. First Union Corp., 980 F. Supp. 36, 52 (D.D.C. 1997) (dismissing section 1981 discrimination claims when the "very language" of plaintiff's complaint demonstrates that her claims were based on national origin).

Moreover, Ndondji's DCOHR/EEOC charge reinforces the fact that he believed that he was discriminated against solely because of his national origin and not his race. Ndondji checked off the "national origin" box as the basis for his discrimination claims, even though a "race" box was available. Ndondji further elaborated in writing that he was replaced by a "non-Angolan individual," then stated "[he] was discriminated against upon [his] national origin,

Angolan." <u>See</u> DCOHR/EEOC charge; Def.'s Mem, Exh. 1. His complaint that he was replaced by a "non-Angolan" shows that he perceived being "Angolan" as referring to his national origin and not his race. In fact, Ndondji never mentions his race or refers to his race as the basis for any discrimination claims he raises in his DCOHR/EEOC charge.

The Court will not recognize Ndondji's attempt to blur race and national origin in order to make out a section 1981 claim. Race and national origin are "ideologically distinct categories." <u>Nyunt v. Tomlinson</u>, 543 F. Supp. 2d 25, 35 (D.D.C. 2008); <u>see also</u> <u>Espinoza v. Farah Mfg.Co.</u>, 414 U.S. 86, 88 (1973) (defining national origin as "the country where a person was born, or more broadly, the country from which his or her ancestors came"). Ndondji contends that he is a "Black Angolan," which he argues should be recognized as a protected group under section 1981, and that there are "very distinct ethnic characteristics of Blank[sic] individuals who hail from Angola." Pl.'s Response at 3. Ndondji, however, never identifies himself as "Black Angolan" in his amended complaint or offers any factual allegations that he was discriminated against because he is a member of this class. He also offers no evidence or arguments as to why identifying oneself as "Angolan" should be considered a "very distinct" ancestral or ethnic characteristic rather than a person's place of birth or origin. Ndondji also alleges that "individuals of African descent" experienced "ongoing discrimination," Am. Compl. ¶ 17, but he never alleges that he was discriminated against because of his ancestry or avers any factual allegations that create a reasonable inference of such a claim. Such general, conclusory allegations that Ndondji was a victim of racial discrimination are simply not enough to bring a section 1981 action, particularly when the clear thrust of his allegations is based on national origin discrimination. In short, bare assertions cannot transform Ndondji's national origin

discrimination claims into racial discrimination claims eligible for section 1981 relief.  See

Nyunt, 543 F. Supp. 2d at 34 (rejecting plaintiff's argument that his national origin

discrimination claims based on his Burmese national origin can be viewed "as like or reasonably

related" to race and can be the basis for a racial discrimination claim); Kun v. Finnegan, 949 F.

Supp. 13, 16 (D.D.C. 1996) (finding that it would be improper for the court to re-cast plaintiff's

national origin claim as a race discrimination claim); Sisay v. Greyhound Lines, Inc., 34 F. Supp.

2d 59, 64 (D.D.C. 1998) (finding plaintiff's national origin discrimination claim could not

reasonably be expected to grow out of his properly exhausted racial discrimination claim and

also noting that allegations of race discrimination may "be wholly unrelated to a claimant's

country of origin").

        Ndondji's occasional reference to his race in his amended complaint is also insufficient

to make out a section 1981 action.  Am. Compl.  Id. ¶ 32a.  A plaintiff "cannot merely invoke his

race in the course of a claim's narrative and automatically be entitled to pursue [section 1981]

relief.  Rather, plaintiff must allege some facts that demonstrate that his race was the reason for

[a] defendant's actions."  Middlebrooks v. Godwin Corp., 722 F. Supp. 2d 82, 88 (D.D.C. 2010)

(quoting Bray v. RHT, Inc., 748 F. Supp. 3, 5 (D.D.C. 1990)).  Here, Ndondji states that he is

black and makes the conclusory allegation that he was discriminated against on the basis of his

"national origin/race," but he fails sufficiently to allege facts to support that claim.  He claims

that he was placed in the "worst" locations because of his "perceived race," Am. Compl. ¶ 33,

and discriminated against because of race in the "conditions of his employment," id. ¶ 40A.

More specifically, he claims that workers who were "not Black" were allowed to have parking

attendants when he did not and "have a say in the workers assigned to them." Id.  ¶ 32A.  He also

alleges that InterPark discriminated against him on the basis of "race/national origin" when he was falsely accused of stealing, blamed for poor performance, and later terminated.  Id. ¶ 40C.

Beyond such conclusory statements, however, Ndondji makes no factual allegations demonstrating that his race, ancestry, or ethnic characteristics were the reason for any mistreatment he suffered at InterPark.  He never identifies the races of the InterPark employees who allegedly discriminated against him or, more importantly, the races of other similarly situated employees who were allegedly treated more favorably than he was.  Ndondji's claims at their core are based on national origin, and mentioning race, without factual allegations demonstrating that any discrimination was racially-motivated, will not transform those claims into section 1981 claims based on racial discrimination.  See Mesumbe v. Howard Univ., 706 F. Supp. 2d 86, 92 (D.D.C. 2010) (dismissing section 1981 claim when plaintiff's complaint only makes a conclusory allegation of racial discrimination but does not allege "disparate treatment was racially motivated" or the "race, ethnicity, or national origin of those who allegedly received preferential treatment"); Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 31 (D.D.C. 2006) (dismissing section 1981 claims when plaintiff only stated that he is African-American but failed to "[plead] any facts or [make] any suggestion of racially discriminatory motive"); Kalantar v. Lufthansa German Airlines, 402 F. Supp. 2d 130, 138 (D.D.C. 2005) (dismissing section 1981 claim when plaintiff did not offer any evidence that he was singled out on the basis of "racial or ethnic characteristics" as "opposed to his citizenship").  Where the question is whether vague allegations of race discrimination are sufficient when no other basis for discrimination is alleged, courts may be more lenient in allowing a section 1981 claim to survive.  See, e.g., Gray v. Universal Serv. Admin. Co., 581 F. Supp. 2d 47, 55 (D.D.C. 2008)

(plaintiff sufficiently pled section 1981 claim based on race and ancestry discrimination to survive motion to dismiss). But when a plaintiff has unambiguously pled national origin as a distinct basis for discrimination, and the only question is whether the plaintiff has also pled racial discrimination, courts should not strain to find that passing references to race are sufficient to state a section 1981 claim. Here, Ndondji's claims rely on national origin discrimination, a distinct and different type of discrimination than racial discrimination. The few references to race do not change the fact that Ndondji's claims are fundamentally about discrimination on the basis of national origin.

That the focus of Ndondji's claims is national origin rather than race is even clearer for his retaliation claims. Ndondji's retaliation claims stem from a meeting where he and others allegedly complained that they were written up when "others that were not foreign nationals did not receive the same treatment," Am. Compl. ¶ 19, and "[t]he foreign national employees . . . complained" that Silver-Ward did not respond to their complaints," id. ¶ 20. He does not allege that he was retaliated against for making a complaint of discrimination based on his race.

Accordingly, the Court will dismiss all of Ndondji's claims under section 1981.

B.      Statute of Limitations

Alternatively, InterPark argues that Ndondji's section 1981 claims should be dismissed because most of those claims are time-barred. Def.'s Mem. at 8; Def.'s Reply at 4-5. Section 1981 claims must be brought within four years after the cause of the action accrues. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-84 (2004). Ndondji filed his complaint on December 30, 2009. Thus, any claims based on events arising prior to December 30, 2005 – four years before he filed the complaint – are time-barred. InterPark argues that many of the acts

underlying Ndondji's claims occurred prior to that date. Def.'s Mem. at 8; Def.'s Reply at 4-5.

Ndondji responds that InterPark is mistaken as to which events alleged in his complaint are

intended to serve as causes of action; he maintains that all of his claims actually fall within the

limitations period. Pl.'s Response at 4-5. As discussed above, Ndondji's section 1981 claims

are dismissed for his failure to state a claim, and the Court need not further explore whether any

of his claims also are subject to dismissal on statute of limitations grounds.


## II.     Title VII Claims

### A.     Exhaustion of Administrative Remedies

InterPark moves to dismiss all of Ndondji's Title VII discrimination and retaliation

claims, except for his discrimination claim based on his termination, for failure to exhaust

administrative remedies. Under Title VII, a plaintiff must timely exhaust his administrative

remedies before bringing an action in federal court. Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir.

2010). To be timely, a claimant first must file an administrative charge alleging that the

employer has engaged in an unlawful employment practice within a specified period (either 180

or 300 days) after the practice has occurred. Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550

U.S. 618, 623-24 (2007). Only those claims that are contained in the administrative complaint or

that are "like or reasonably related" to the allegations of the administrative complaint can be

raised in a Title VII lawsuit. Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); see also

Bailey v. Verizon Comm., Inc., 544 F. Supp. 2d 33, 37-38 (D.D.C. 2009) (noting that "[i]f a

plaintiff's EEOC charge makes a class of allegation altogether different from that which she later

alleges when seeking relief in federal district court, she will have failed to exhaust administrative

remedies"). Such claims "must arise from 'the administrative investigation that can reasonably

be expected to follow the charge of discrimination.'" Park, 71 F.3d at 907 (quoting Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981)). The exhaustion requirement provides the EEOC the opportunity to investigate and "serves the important purpose of giving the charged party notice of the claim and 'narrow[ing] the issue for prompt adjudication and decision.'" Id. (quoting Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 472 n.325 (D.C. Cir. 1976)). The defendant bears the burden of proving by a preponderance of the evidence that the plaintiff has failed to exhaust his administrative remedies. Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985). "Meager, conclusory allegations" that plaintiff has not exhausted his administrative remedies will not be sufficient. Hudson v. Children's Nat'l Medical Ctr., 645 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009) (quoting Brown, 777 F.2d at 12).

Requiring claimants properly to raise claims before the EEOC should not be construed to place a "heavy technical burden" on individuals, but "it is also true that 'the requirement of some specificity in a charge is not a mere technicality.'" Park, 71 F.3d at 907 (citing Ostrapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)). A claimant is not necessarily limited to the boxes selected in the administrative complaint as the basis for the claim if his written explanation can provide a basis for identifying the nature of his claims. Robinson-Reeder v. Am. Council Educ., 532 F. Supp. 2d 6, 13 (D.D.C. 2008). At the same time, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." Id. Dismissal is required when a plaintiff fails to exhaust his administrative remedies with respect to particular claims. Rann v. Chao, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming dismissal of plaintiff's age discrimination claims for failure to

exhaust administrative remedies); <u>Gillet v. King</u>, 931 F. Supp. 9, 12-13 (D.D.C. 1996)

(dismissing plaintiff's Title VII claims for failure to exhaust administrative remedies).

### 1. Discrimination Based on National Origin

InterPark contends that the majority of Ndondji's discrimination claims under Title VII

should be dismissed for failure to exhaust administrative remedies. Def.'s Mot. at 9-10; Def.'s

Reply at 6-8. According to InterPark, Ndondji has only alleged one proper claim – that

he was terminated because of his national origin. Def.'s Mem. at 2; Def.'s Reply at 11.

Ndondji's "reassignment/transfer allegation" and all remaining discrimination claims, InterPark

argues, should be dismissed. <u>Id.</u> In response, Ndondji argues that all of his discrimination

claims are "like or reasonably related to the allegations" raised before the EEOC, and a

reasonable EEOC investigation would have led to an investigation of all of his claims. Pl.'s

Response at 5-6.

The Court finds that Ndondji properly exhausted his administration remedies for his

discrimination claims based on national origin relating to (1) his disciplinary write-up and (2) his

termination. His DCOHR/EEOC charge states:

> I. On 7/28/88, I was hired by Respondent to work as a Lobby Attendant. I was
> unjustly issued a disciplinary writeup regarding the disappearance of $209.00
> from a company facility. Finally, on 12/12/06, while I was employed by a
> Respondent as a Facility Manager, I was unjustly discharged from employment.
> By contrast, I was replaced by a non-Angolan individual.
>
> II. I believe that I was discriminated against based upon my national origin,
> Angolan, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Def.'s Mem., Exh. 1. Ndondji also checked the "national origin" box on the DCOHR/EEOC

form. The DCOHR and EEOC therefore had timely and sufficient notice of his national origin

discrimination claims based on his disciplinary writeup and his termination.

However, Ndondji failed to exhaust his administrative remedies for his remaining discrimination claims.[5] Ndondji now alleges a host of negative working conditions he allegedly experienced, including transfers to difficult locations, an increased workload, management reprimands, spying by a co-worker, and placement on PIP. Am. Compl. ¶¶ 32-40. But Ndondji does not reference his working conditions or offer any factual allegations to support these claims in his DCOHR/EEOC charge. Such claims do not involve the same factual circumstances or the same types of discriminatory conduct as, and hence are not "like or reasonably related" to, the only two acts raised in his DCOHR/EEOC charge: receiving a disciplinary write-up and being terminated. See Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (finding plaintiff failed to exhaust administrative remedies when EEOC charge referenced "different time frames, actors, and discriminatory conduct than the central factual allegations").

Ndondji specified two claims in his DCOHR/EECO charge, a particular disciplinary write-up in 2006 and his December 2006 discharge. Those administrative claims do not capture the mix of working condition complaints that he now also pursues. A reasonable investigation of Ndondji's two specific complaints would not be expected to reveal his claims of negative working conditions that started as far back as 2004. He should not be allowed to bypass the Title VII exhaustion requirement and now litigate claims that he could have but never raised before

<hr/>

[5] Some district courts applying the Supreme Court's decision in National R.R Passenger Corp. v. Morgan, 536 U.S. 101 (2002), have held that a plaintiff must exhaust his administrative remedies with respect to each discrete discriminatory and retaliatory act alleged. See, e.g., Taylor v. Mabus, 685 F. Supp. 2d 94, 99 (D.D.C. 2010); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005); Coleman v. Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137 (D.D.C. 2004). Cf. Thomas v. Vilsack, 718 F. Supp. 2d 106, 121 (D.D.C. 2010); Jones v. Bernanke, 685 F. Supp. 2d 31, 37 (D.D.C. 2010); Lewis v. Dist. of Columbia, 535 F. Supp. 2d 1, 7 (D.D.C. 2008). The D.C. Circuit has not weighed in on whether to adopt this interpretation of Morgan for the exhaustion of remedies requirement. Payne, 619 F.3d at 65 ("We need not decide whether Morgan did in fact overtake [the] line of cases [permitting the litigation of unfiled claims that were 'like or reasonably related to claims' filed with the agency]."). This Court need not resolve the question here because Ndondji's remaining discrimination claims do not satisfy even the more permissive "like or reasonably related to" standard.

the EEOC or the DCOHR.  To hold otherwise would undermine the purpose of the Title VII

exhaustion requirement – to provide sufficient notice to the agency and charged party of the

claims.  Park, 71 F.3d at 907;  Nyunt, 543 F. Supp. 2d at 35.  Accordingly, the Court will dismiss

Ndondji's national origin discrimination claims under Title VII, other than those based on his

disciplinary write-up and termination, for failure to exhaust his administration remedies.

## 2. Retaliation

The Court also agrees with InterPark that Ndondji failed to exhaust his administrative

remedies for his retaliation claims under Title VII.  Ndondji is not required to allege facts

sufficient to make out a prima facie case of retaliation in his DCOHR/EEOC charge or even in

his complaint, see Ellis v. Georgetown Univ. Hosp., 631 F. Supp. 2d 71, 76 (D.D.C. 2009), but at

a minimum he must have raised his pre-charge retaliation allegations with the EEOC to exhaust

his administrative remedies, see Payne, 619 F.3d at 65 (affirming dismissal of retaliation claim

when plaintiff failed to exhaust her administrative remedies on that particular retaliation claim);

Maryland v. Sodexho, 474 F. Supp. 2d 160, 162 (D.D.C. 2007) (noting that an employee "must .

. . alert the EEOC and the charged employer with the nature of the alleged wrongdoing in the

EEOC charge").  Retaliation claims that occurred prior to the filing of a claim must be

administratively exhausted.  See, e.g., Brown v. Dist. of Columbia, 251 F. Supp. 2d 152, 162

(D.D.C. 2003) (dismissing Title VII retaliation claims for failure to exhaust administrative

remedies when plaintiff failed to raise retaliation allegations in EEOC complaint); Pyne v. Dist.

of Columbia, 298 F. Supp. 2d 7, 12 (D.D.C. 2002) (finding that to exhaust administrative

remedies and seek relief, it is a "prerequisite" to bring a retaliation charge before the EEOC if

the retaliation occurred prior to the filing of the EEOC charge); Hunt v. Dist. of Columbia Dep't

of Corrections, 41 F. Supp. 2d 31, 37 (D.D.C. 1999) (finding that plaintiff failed to exhaust administrative remedies when alleging a retaliation claim that occurred prior to filing and was different than that raised in EEOC charge).

Here, Ndondji failed to include any factual allegations in his DCOHR/EEOC charge raising a retaliation claim. Although he does not organize his claims into specific counts, the Court identifies four potential retaliation claims in his amended complaint. As a result of his complaints to management sometime in 2006, Ndondji alleges that InterPark retaliated against him by (1) assigning a co-worker to "spy" on him; (2) issuing a disciplinary warning; (3) placing him on a Performance Improvement Plan ("PIP"), and (4) terminating him. Am. Compl. ¶¶ 23; 26; 47-49; 59-60. Each of Ndondji's alleged retaliation claims occurred prior to his filing of the administrative charge, but he neither checked the "Retaliation" box on the DCOHR/EEOC charge, nor offered factual allegations in the charge to support a retaliation claim. His charge thus lacks any facts alleging that InterPark acted in retaliation or any reference to complaints he allegedly made to InterPark management or human resources. Ndondji was not necessarily limited to the boxes he checked on the DCOHR/EEOC form to indicate the basis for his Title VII claim, see Robinson-Reeder, 532 F. Supp. 2d at 13, but here, he never expressed or described any belief that InterPark retaliated against him, see Maryland, 474 F. Supp. at 162 (finding that plaintiff "need only describe [the nature of the charge] in the text of the [EEOC] charge form" to exhaust his administrative remedies as to that charge). In fact, Ndondji's written explanation on the DCOHR/EEOC charge only discussed his belief that he was "discriminated against based upon [his] national origin, Angolan." Def.'s Mem., Exh. 1. Ndondji never gave any indication whatsoever to the DCOHR or the EEOC that InterPark had engaged in retaliatory behavior.

Moreover, raising discrimination claims before the EEOC is not sufficient to warrant adding retaliation claims later in a Title VII suit. Discrimination and retaliation claims are considered distinct types of claims that must be raised independently if the retaliation occurred prior to the filing of the administrative charge. See Ponce v. Billington, 652 F. Supp. 2d 71, 73-74 (D.D.C. 2009) (finding plaintiff failed to exhaust administrative remedies for retaliation when he did not allege retaliation in his EEOC complaint and retaliation was not "like or reasonably related to" his other discrimination claims); Miller v. Rosenker, 578 F. Supp. 2d 107, 112 (D.D.C. 2008) (dismissing age or gender discrimination claims when he only raised retaliation claims in his administrative complaint); Maryland, 474 F. Supp. 2d at 162 (dismissing earlier discrimination claims when plaintiff only raised retaliation claims, failed to check the discrimination box on the EEOC charge or give any indication in the EEOC charge that the claims were based on discrimination). Therefore, because of the absence of any facts or allegations in the DCOHR/EEOC charge indicating that his claims were based on retaliation, Ndondji has failed to exhaust his administrative remedies for his retaliation claims under Title VII. Accordingly, Ndondji's retaliation claims under Title VII will be dismissed. See Marcelus v. Corrections Corp. of America, 540 F. Supp. 2d 231, 236 (D.D.C. 2008) (dismissing retaliation claims when plaintiff did not raise retaliation claim in EEOC charge and when nothing in EEOC charge referenced retaliation).

B.      Statute of Limitations

InterPark moves to dismiss Ndondji's Title VII discrimination claims based on events that occurred prior to August 9, 2006, as time-barred. Def.'s Mem. at 11; Def.'s Reply at 8; see 42 U.S.C. § 2000e-5(e)(1). Under Title VII, a plaintiff must file a charge with the EEOC within

300 days of the date of the alleged discriminatory act. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 (2002); see 42 U.S.C. §20000e-5(e)(l) (2008). InterPark also notes that Ndondji did not challenge its statute of limitations argument. Def.'s Mem. at 8; Def.'s Reply at 8. Ndondji contests InterPark's statute of limitations arguments regarding his section 1981 claims, but he never addresses Title VII's statute of limitations specifically. Pl.'s Response at 8.[6]

Dismissal based on this affirmative defense is appropriate when the facts giving rise to the statute of limitations defense are clear from the face of the complaint. Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998). The Court may dismiss a claim on statute of limitations grounds if "no reasonable person could disagree on the date" on which the cause of action accrued. Smith v. Brown & Williamson Tobacco Corp., 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing Kuwait Airways Corp. v. Am. Sec. Bank, N.A., 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

By requesting that the Court dismiss the majority of Ndondji's claims on Title VII statute of limitation grounds, InterPark appears to characterize those claims as having occurred shortly after his 2004 transfer to a different location. Ndondji's complaint, however, contains vague allegations without precise dates. As InterPark acknowledges, Ndondji "did not provide specific dates" for some alleged discriminatory acts. See Def.'s Mem. at 13, n. 9. Indeed, it is not clear

---

[6] Arguably, the Court could treat this argument as conceded based on Ndondji's failure to respond directly to InterPark's Title VII statute of limitations argument in his opposition. See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citations omitted).

as to the exact timing of any of the alleged discriminatory acts, except for his 2004 transfer to a different location and his December 2006 termination. Prior to discovery, the Court is not prepared to take a narrow reading of Ndondji's complaint and hence declines to dismiss his claims on statute of limitations grounds at this time. InterPark has failed to satisfy its burden to demonstrate that Ndondji's discrimination claims are "conclusively time-barred" on the face of the complaint.

C.    Adverse Employment Actions

The Court agrees with InterPark that Ndondji's Title VII discrimination claims, excluding his termination claim, are subject to dismissal for a failure to satisfy one element of a prima facie case. InterPark argues that Ndondji's discrimination allegations do not constitute discrete adverse employment actions as required to bring a Title VII case, including the following alleged actions: (1) InterPark placed him in the "worst" and "most difficult" locations (Am. Compl. ¶¶33-34); (2) InterPark deprived him of "adequate" and satisfactory attendants (¶¶ 34-35); (3) InterPark forced him to over-park the location and then blamed him for the failure to prevent accidents (¶ 36); (4) InterPark overworked him and blamed him for the poor performance of others (¶ 39); (5) InterPark assigned another employee to spy on him (¶ 40B); and (6) InterPark placed him on a performance improvement plan ("PIP") (¶ 42). See Def.'s Mem. at 13-14; Def.'s Reply at 9. Ndondji largely avoids responding to InterPark's arguments, except to emphasize that there is a liberal pleading standard at the motion to dismiss stage. See Pl.'s Response at 6-7.

A plaintiff does not need to plead each element of his prima facie case to survive a motion to dismiss, Robinson-Reeder, 532 F. Supp. 2d at 14 (quoting Swierkiewicz v. Sorema

N.A., 534 U.S. 506, 515 (2002)), but he "must allege facts that, if true would establish the elements of each claim" in his complaint, id. (citing Rattigan v. Gonzales, 503 F. Supp. 2d 56, 75 (D.D.C. 2007)).  Thus, "the Court may explore the plaintiff's prima facie case at the dismissal stage to determine 'whether the plaintiff can ever meet his initial burden to establish a prima facie case for Title VII discrimination.'" Rattigan, 503 F. Supp. 2d at 72 (citation omitted).  To succeed on a Title VII claim, a plaintiff has the initial burden of establishing a prima facie case of discrimination by showing that "'(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"  Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007).  "An 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  Douglas v. Preston, 559 F.3d 549, 549 (D.C. Cir. 2009); Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 760 (1998)).  The employee "must experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)).  "A tangible employment action in most cases inflicts direct economic harm."  Douglas, 559 F.3d at 552 (quoting Burlington, 524 U.S. at 762).  "[C]ourts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct."  Taylor v. Fed. Deposit Ins. Corp., 132 F.3d 753, 765 (D.C. Cir. 1997).

Here, Ndondji fails to allege any factual circumstances that constitute an adverse

employment action as required to bring a Title VII claim.[7]  Generally, his discrimination claims

other than his termination claim reflect employment-related grievances amounting to

dissatisfaction with his working conditions.  These grievances cannot qualify as adverse

employment actions.  "Not everything that makes an employee unhappy" is an adverse

employment action.  <u>Broderick v. Donaldson</u>, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (quoting

<u>Russell v. Principi</u>, 257 F.3d 815, 818 (D.C. Cir. 2001)).  Only "tangible harm[s]," such as a

"change in grade, salary, or other benefits, rise to the level of adverse employment actions."

<u>Robinson-Reeder</u>, 532 F. Supp. 2d at 16.  "Minor changes in work-related duties or

opportunities" do not constitute adverse employment actions without some tangible harm.

<u>Stewart v. Evans</u>, 275 F.3d 1126, 1135 (D.C. Cir. 2002).

       1.       Transfers/Reassignments to Other Locations[8]

Ndondji claims that his transfers to the "worst" and "most difficult" locations must

constitute adverse employment actions.  Am. Compl. ¶ 33-34.  If his complaint is liberally

construed in his favor, Ndondji's allegations could suggest that he was transferred to additional

locations beyond the one transfer to the 1900 19th Street location in 2004 mentioned in his

complaint.  But Ndondji has not alleged that any undesirable transfer led to "objectively tangible

harm" such as a decrease in salary or benefits or that any transfer affected the "terms, conditions,

---

[7]  Ndondji's amended complaint is vague in its allegations and does not clearly set forth all causes of action.
Hence, several of his allegations may have been intended to serve as "background information" rather than distinct
claims.  For purposes of analyzing the viability of his Title VII discrimination claims, however, the Court will
consider all allegations that could potentially represent discrimination claims.

[8]  Ndondji explains that his allegation of a 2004 transfer to one of the busiest locations (Am. Compl. ¶ 10) is
not meant to be treated as a "cause of action."  Pl.'s Response at 4.  Rather, he claims that this allegation is meant to
be read as a "supporting statement" for other discriminatory events that occurred later.  <u>Id.</u>  Ndondji, however,
explains that his allegation that he was "put in the worst locations" is meant to state a cause of action.  <u>Id.</u>; Am.
Compl. ¶ 33.

or privileges" of his employment.  See Martin v. Locke, 659 F. Supp. 2d 140, 148 (D.D.C. 2009) (finding plaintiff failed to show that her job transfer constituted an adverse employment action when she did not allege her pay or grade was reduced).  Lateral transfers – those transfers where a person does not suffer a decrease in compensation or benefits or a "demotion in form or substance" – are generally not viewed as adverse employment actions.  Stewart, 352 F.3d at 426 (citing Brown, 199 F.3d at 457).  A lateral transfer must also involve the "withdrawing [of] an employee's supervisory duties" or "reassignment with significantly different responsibilities" before it will amount to an adverse employment action.  Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (citations omitted).  Ndondji has not alleged that his transfers led to a reduction in pay or benefits or "demotion in form or substance" when compared to his position at other locations.  He may have been transferred to "less desirable" locations, but transfers without more do not constitute adverse employment actions.

2.    Heavier Workload

None of Ndondji's allegations relating to his work conditions rises to the level of an adverse employment action, including his claims that he was deprived of a reasonable number of attendants compared to other employees and that he was over-worked.  "Scarce resources and increased workloads are familiar complaints in virtually every workplace and every industry, but they do not give rise to a discrimination claim under Title VII."  Rattigan, 503 F. Supp. 2d at 73; see also Mack v. Strauss, 134 F. Supp. 2d 103, 113-14 (D.D.C. 2001) (holding that an allegedly increased workload is insufficient to bring a discrimination claim without "some adverse change in the terms, conditions, or privileges of employment"); Brodetski v. Duffey, 141 F. Supp. 2d 35, 45 (D.D.C. 2001) (finding that plaintiff's heavier workload compared to his peers was not

sufficiently adverse action, that "work inequity" is the "level of personnel decision-making in which courts should not meddle," and that employees should expect to shoulder an "extra load" on occasion or "step in if there [are] unexpected staff shortages"). Ndondji alleges that he worked during "lunch and times off" when he was placed on a PIP, Am. Compl. ¶ 25, but it is not surprising that Ndondji may have put in extra time and effort while on a PIP. Besides his time on a PIP, he fails to allege any other occasion when he was overworked due to the shortage of qualified parking attendants. See Mayers v. Laborer's Health & Safety Fund, 478 F.3d 364, 369 (D.C. Cir. 2007) (finding that plaintiff failed to allege "adverse action" when she failed to allege that her workload increased "above and beyond what ordinarily was expected of her").

Ndondji's claims that management demanded that he over-park the garage also cannot, standing alone, amount to an adverse employment action. "Courts are not in a position to review every task that management assigns to employees." Brodetski, 141 F. Supp. 2d at 45 (citing Mungin v. Katten Muchin & Zavs, 116 F.3d 1549, 1556 (D.C. Cir. 1997)). Courts should hesitate before engaging in "'judicial micromanagement of business practices' by second-guessing employers' decisions." Baloch v. Kempthorne, 550 F.3d 1191, 1191 (D.C. Cir. 2008) (citation omitted). Ndondji's allegations that management "forced" him to over-park the cars and issued orders concerning how to carry out his job responsibilities do not reflect a "significant change in [his] employment status." Taylor, 350 F.3d at 1293; see also Brantley v. Kempthorne, No. 06-1137, 2008 U.S. Dist. LEXIS 38406, at *14 (D.D.C. May 13, 2008) ("To qualify as an adverse action, the incident must be inherently related to plaintiff's employment status . . . . Events that merely have an effect on plaintiff's work environment are legally insufficient.). This Court will not second-guess InterPark's business decisions as to what constitutes a reasonable

number of staff members and their appropriate location assignments. Ndondji's disagreements with InterPark management about the qualifications of other employees, the reasonable number of employees assigned to a location, and its business practices, such as the proper time to put out a "Full" sign for a parking garage, cannot form the basis of a Title VII lawsuit.

3.      Management Reprimands

Similarly, management reprimands for failing to prevent parking accidents or blame for the poor performance of Ndondji's parking attendants are not adverse employment actions. "Formal criticisms or poor performance evaluations" are not necessarily adverse employment actions, and "should not be considered such if they did not 'affect[] the [employee's] grade or salary.'" Taylor, 350 F.3d at 1293 (quoting Brody, 199 F.3d at 457); see also Douglas, 559 F.3d at 552 ("[P]erformance evaluations ordinarily [are] not actionable under Title VII."); Stewart, 275 F.3d at 1135 (noting that "formal criticisms or reprimand without additional disciplinary action" are not adverse employment actions); Broderick, 437 F.3d at 1234 n. 2 (finding that "disciplinary memo" does not constitute adverse action when it did not affect plaintiff's "grade, salary, duties or responsibilities"); Powell v. Castaneda, 390 F. Supp. 2d 1, 23-24 (D.D.C. 2005) (finding that letter of reprimand for being late to a meeting and lower performance review did not constitute adverse employment actions). Ndondji did not suffer any disciplinary action or decrease in salary, benefits, or significant responsibilities as a result of management's reprimands; thus, his complaints about management reprimands cannot constitute adverse employment actions.

4.      "Spying" and Disciplinary Write-up

Ndondji's allegation that InterPark assigned an employee to "spy" on him also does not

entail objectively tangible harm and thus does not constitute an adverse employment action. Closely supervising an employee will not automatically subject an employer to Title VII exposure. See, e.g., Zelaya v. Unicco Service Co., No. 07-02311, 2010 WL 3292364, at *8 (D.D.C. 2010) (finding that assigning an employee to monitor plaintiff temporarily constitutes a "petty slight[]" and "minor annoyance[]" and is not a materially adverse action); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 89 n.20 (D.D.C. 2009) (finding that "spying" by co-workers fails to qualify as adverse employment action because there was no allegation of objectively tangible harm). "Being subject to 'scrupulous monitoring' does not constitute an adverse action because 'it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs.'" Rattigan, 503 F. Supp. 2d at 56 (quoting Runkle v. Gonzales, 391 F. Supp. 2d 210, 225 (D.D.C. 2005) (citation omitted)); see also Lester v. Natsios, 290 F. Supp. 2d 11, 30 (D.D.C. 2003) ("[B]eing closely supervised or 'watched' does not constitute an adverse action that can support a claim under Title VII."). Here, Ndondji maintains that an InterPark employee (Stevenson) was assigned to spy on him and contends that the very act of "spying" itself constituted a discriminatory act. Am. Compl. ¶¶ 23, 40B. Ndondji, however, has not alleged that the spying led to a "reduction in [his] benefits, hours of work or salary, or that he suffered significantly diminished work responsibilities, all of which would show [he] suffered an adverse employment action." Nurriddin, 674 F. Supp. 2d at 94.

Ndondji also claims that Stevenson falsely accused him of "false practices," including "falsely accusing him of taking money," Am. Compl. ¶¶ 23, 40C, and although it is not clear in the amended complaint, it appears that Ndondji is alleging that it is Mr. Stevenson's false statements that led him to be "unjustly issued a disciplinary write-up" as referenced in Ndondji's

DCOHR/EEOC form. Receiving a disciplinary write-up alone, however, is not sufficient to constitute an adverse employment action. Hunter v. Ark Restaurants Corp., 3 F. Supp. 2d 9, 20 (D.D.C. 1998) (finding that supervisors filing disciplinary write-ups against plaintiff is not an adverse employment action when plaintiff did not allege any facts that he suffered a "demonstrably adverse action" that affected his employment position). Ndondji also contends that his disciplinary-write up resulted in his unfair placement on a PIP, Am. Compl. ¶¶ 23, but PIP placement does not constitute an adverse employment action for the reasons discussed below.

5.    Performance Improvement Plan ("PIP")

Finally, Ndondji argues that his placement on a PIP constituted a discriminatory act. Am. Compl. ¶ 42; Pl.'s Response at 8. Placement on a PIP, however, cannot rise to the level of an adverse employment action without allegations of "objectively tangible harm" to the "terms, conditions, or privileges" of employment. See Taylor, 350 F.3d at 1293 (finding that placement on a PIP alone does not constitute an adverse employment action); Kelly v. Mills, 677 F. Supp. 2d 206, 221 (D.D.C. 2010) (same). Here, Ndondji has not alleged that his placement on a PIP affected his grade or salary, or led to a material change of benefits or responsibilities such that it rose to the level of an adverse employment action. See Douglas, 559 F.3d at 552 (noting that "performance evaluations ordinarily are not actionable under Title VII; '[t]he result of an evaluation is often speculative, making it difficult to remedy'")(quoting Russell, 275 F.3d at 818). Ndondji's argument that his PIP was used to "embarrass" and "harass" him is also not enough. "Public humiliation" or "loss of reputation" is not enough to establish an adverse action. Forkkio, 306 F.3d at 1130-31 (quoting Stewart, 275 F.3d at 1136). The fact that Ndondji

-29-

allegedly never received PIP evaluations did not adversely affect his employment.  Taylor, 350

F.3d at 1293 (finding that delay of plaintiff receiving PIP performance evaluations was not an

adverse employment action).  Although Ndondji was eventually terminated after his PIP

placement, he does not allege any objectively tangible harm as a result of the PIP placement

itself.  See Kelly, 677 F. Supp. 2d at 221 (dismissing plaintiff's discrimination claim for the PIP

placement that led to plaintiff's termination).

*  *  *  *  *

In sum, beyond his termination claim, each of Ndondji's remaining discrimination claims

must be dismissed because each does not as a matter of law rise to the level of an adverse

employment action as required under Title VII to establish a prima facie case of discrimination.

See Rattigan, 503 F. Supp. 2d at 74-75; (citing Runkle, 391 F. Supp. 2d at 222) (dismissing

claims when allegations did not "amount to legally cognizable adverse actions and therefore

would not enable him to ever establish a prima facie case under Title VII.").

## III. D.C. Human Rights Act ("DCHRA")

The DCHRA, like Title VII, prohibits certain discriminatory practices "[b]y an

employer," making it unlawful to "fail or refuse to hire, or to discharge, any individual; or

otherwise discriminate against any individual, with respect to his compensation, terms,

conditions, or privileges of employment" based upon protected categories including, inter alia,

an individual's "race, color, religion, national origin, [or] sex."  D.C. Code § 2-1402.11(a)(1).  In

the end, Ndondji's DCHRA claims fare about the same as his Title VII claims.

### A. Failure to Exhaust Administrative Remedies

InterPark argues that Ndondji has failed to exhaust his administrative remedies for his

discrimination and retaliation claims under the DCHRA, and thus that this Court must dismiss all of Ndondji's DCHRA claims except his termination claim. See Def.'s Mem. at 9-10; Def.'s Reply at 6-7. InterPark, however, is incorrect in arguing that Ndondji is required to satisfy such a requirement under the DCHRA. Generally, only District of Columbia government employees are required to exhaust their administrative remedies prior to filing a lawsuit under the DCHRA. See Bowie v. Gonzales, 433 F. Supp. 2d 24, 33 (D.D.C. 2006); Fowler v. Dist. of Columbia, 122 F. Supp. 2d 37, 40 (D.D.C. 2000) (noting that the DCHRA "generally does not require exhaustion of administration remedies, except for employees of the District of Columbia government") (citing Hunt, 41 F. Supp. 2d 31, 37 (D.D.C. 1999)); Kennedy v. Dist. of Columbia, 654 A.2d 847, 863 (D.C. 1995) ("[W]e [have] clearly stated that D.C. government employees, unlike non-government employees, are required to exhaust the administrative remedies available to them under the D.C. Human Rights Act.") (citing Williams v. Dist. of Columbia, 467 A.2d 140, 141 (D.C. 1983)). Nothing in the plain language of the DCHRA suggests that an exhaustion requirement applies to non-District of Columbia government employees, and InterPark has not provided the Court with any authority to support its position. Therefore, the Court finds that all of Ndondji's DCHRA claims survive this challenge.

     B.     Statute of Limitations

InterPark also argues that Ndondji's discrimination claims are time-barred under the DCHRA and requests that the Court exclude from this case all alleged discriminatory acts that occurred prior to June 4, 2006. See Def.'s Mem. at 10-11; Def.'s Reply at 8. InterPark notes that Ndondji has failed to specifically contest its DCHRA statute of limitations arguments. Id. Under the DCHRA, claims must be filed within one year of the occurrence of the alleged

discriminatory act.  D.C. Code §§ 2-1403.04, 2-1403.16.  As discussed earlier, InterPark has not established that any of Ndondji's discrimination claims are "conclusively time-barred" except his 2004 transfer to a different location, to the extent that it can be considered as a distinct alleged discriminatory act.  Prior to discovery, the Court declines to dismiss any of Ndondji's claims on statute of limitations grounds at this time.

      C.    <u>Failure to State a Prima Facie Case for Discrimination</u>

      Lastly, InterPark, adopting the same reasoning directed to Ndondji's Title VII discrimination claims, argues that Ndondji's DCHRA discrimination claims, excluding his termination claim, should be dismissed for failure to state a prima facie case of discrimination. Discrimination and retaliation claims brought under the DCHRA are analyzed in the same manner as such claims arising under Title VII.  <u>Mungin</u>, 116 F.3d at 1553; <u>see also</u> <u>Ali v. Dist. of Columbia</u>, 697 F. Supp. 2d 88, 93 n.6 (D.D.C. 2010) ("The D.C. Court of Appeals has made clear that federal case law addressing questions arising in Title VII cases is applicable to the resolution of analogous issues raised regarding DCHRA claims."); <u>Wicks v. Am. Transmission Co. LLC</u>, 701 F. Supp. 2d 38, 43-44 (D.D.C. 2010) (applying the same analysis used in evaluating Title VII discrimination claims to evaluate DCHRA discrimination claims); <u>Howard Univ. v. Green</u>, 652 A.2d 41, 45 & n.3 (D.C. 1994).  The Court will accordingly apply Title VII analysis to evaluate Ndondji's DCHRA claims.  For the reasons discussed earlier, then, the Court agrees that Ndondji has failed to allege discriminatory acts that constitute "adverse employment actions."  Therefore, his discrimination claims under the DCHRA, other than his claim based on his termination, will be dismissed for failure to establish a prima facie case of discrimination. InterPark has not challenged Ndondji's retaliation claims under DCHRA on this basis, and hence

they survive.

## **CONCLUSION**

For the reasons stated above, the Court will grant in part and deny in part InterPark's motion to partially dismiss Ndondji's amended complaint.  As a result, Ndondji's case may move forward only with respect to the following claims: (1) discrimination under Title VII and the DCHRA based on his termination and (2) retaliation under the DCHRA.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated: March 9, 2011